**STATE of South Dakota, Plaintiff and Respondent,**

v.

**Roger E. OLGAARD and Jack K. Behrens, Defendants and Appellants.**

**No. 11750.**

Supreme Court of South Dakota.

Dec. 31, 1976.

Doyle D. Estes, Asst. Atty. Gen., Pierre, for plaintiff and respondent; William J. Janklow, Atty. Gen., Pierre, on the brief.

Glen H. Johnson, of Gunderson, Farrar, Aldrich, Warder, DeMersseman & Johnson, Rapid City, for defendants and appellants.

WOLLMAN, Justice.

Defendants were charged with the unlawful possession of an open container of alcoholic beverage and the unlawful possession of marijuana in a quantity in excess of one ounce after these substances were discovered by a South Dakota highway patrol-

man in defendants' vehicle after defendants had been stopped at an Alcohol Safety Action Program (ASAP) roadblock in Volga, South Dakota, at approximately 10:00 p. m., September 27, 1974. The trial court denied defendants' motion to suppress the evidence acquired as a result of the roadblock stop. We granted defendants' petition for permission to take an intermediate appeal pursuant to SDCL 23–51–5. We reverse and remand.

The officer who conducted the stop of defendants' vehicle testified with respect to the ASAP roadblock program that,

" * * * [W]e usually have one road block a week in different areas, mainly set up for alcohol related offenses plus other things, to check headlights and motor vehicle safety inspection."

On the night in question there were several patrol cars parked with their red lights flashing at the point at which the officers had set up a large stop sign in the highway to mark the roadblock. There were four highway patrolmen at the scene. All vehicles passing in both directions were stopped. If the investigating officer had reason to believe that the driver of a stopped vehicle had been drinking he would ask the driver to pull off to the side of the road so that further investigation could be made. In most ASAP stops the officer relies upon his sense of smell, coupled with his observations concerning the driver's actions and appearance and the presence of beer and liquor containers in the vehicle, to determine whether a driver has been drinking.

In defendants' case, the officer in charge asked the driver, defendant Olgaard, for his drivers license. As the officer was inspecting the license he detected what he thought was the odor of beer coming from the vehicle. In response to the officer's question concerning an open alcoholic beverage container, defendant Olgaard replied that some beer might have spilled. Defendant Olgaard then removed a half empty beer bottle from a sack. Further investigation by the officer revealed the presence of marijuana in the vehicle.

After measuring the roadblock stop in the instant case against the carefully circumscribed checkpoint stops approved by the United States Supreme Court in *United States v. Martinez-Fuerte*, 428 U.S. ——, 96 S.Ct. 3074, 49 L.Ed.2d 1116, we conclude that defendants are correct in their assertion that the ASAP roadblock stop was an unconstitutional infringement of their right to be free from unreasonable searches and seizures guaranteed by the Fourth Amendment to the United States Constitution and Article VI, § 11 of the South Dakota Constitution.

As the *Martinez-Fuerte* case makes clear, a checkpoint stop is a seizure within the meaning of the Fourth Amendment. In balancing the interest of the public in having drunken drivers removed from our public highways against the right of the motoring public to be free from interference by law enforcement officials, we start with the proposition that the hazard to the public created by drunken drivers is so terrifyingly real as to require no extensive statistical demonstration. One recent news release by the South Dakota Department of Public Safety will suffice:

"Tests to determine the presence or absence of alcohol were taken in 89 of the first 154 fatal crashes from January through October, 1976. Of those tested nearly 62% were alcohol related crashes. * * *

"In those fatal crashes tested, 68 people died in a crash that involved alcohol, many of whom were innocent victims of another person's drinking spree. Thirty-nine of those killed were drunk drivers and they took 17 passengers, four drivers in other vehicles, five passengers in other vehicles, and three pedestrians with them.

"According to National Safety Council 1974 Economic Loss Indicators, it costs $97,000 for each person killed in a traffic accident. Using that figure, which has undoubtedly risen with inflation, those 68 people killed in alcohol related crashes cost South Dakota $6,596,000. * * *" Public Safety News & Views, South Dakota Department of Public Safety, December 1976, page 3.[1]

Although the need for investigative stops conducted for the purpose of identifying and apprehending drunken drivers is surely as clear as that which was sufficient to justify the checkpoint stops in the *Martinez-Fuerte* case, supra, not all of the other factors that the United States Supreme Court held were sufficient to justify the warrantless checkpoint stops in that case were present in the instant case. The principal difference is that the roadblock in question was not at a permanent location. It was upon the fact of permanency of location that the decision in *Martinez-Fuerte* turned. 428 U.S. ——, ——, 96 S.Ct. 3074, 3086, 49 L.Ed.2d 1116, 1133, n. 19. Neither the defendants in the instant case nor other motorists had prior knowledge of the roadblock in question and presumably could not have acquired such knowledge, for by its very nature the roadblock was set up to stop without prior warning, and perforce by surprise, all motorists who happened to pass that particular point on the night in question.

With respect to the discretionary aspect of ASAP roadblock enforcement activity, the record does not reveal by whom the decision was made to set up the roadblock in question. In contrast to the situation in the *Martinez-Fuerte* case, supra, we do not know whether the location of the roadblock was chosen by officers in the field or by administrative officials responsible for deciding how to deploy their enforcement resources. Although we would prefer to assume that the decision was made at a senior administrative level, nothing in the record supports such an assumption. In the absence of record evidence that the decision to establish the roadblock was made by anyone

---

1. We realize, of course, that the information set forth in the quoted material has not been subject to challenge by the parties in the instant case, but we doubt that anyone would contend that the information does not accurately illustrate the public peril created by drunken drivers.

other than the officers in the field, the roadblock in question had certain characteristics of a roving patrol, a type of intrusion into a motorist's privacy interest that was held unconstitutional in *Almeida-Sanchez v. United States*, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596, and *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607.

We need not decide whether the state may constitutionally stop motorists pursuant to statutory authority for the purpose of checking drivers licenses, compliance with motor vehicle safety requirements, weight limits and related matters. See, e. g., SDCL 32–2–7 and 32–21–28. *United States v. Martinez-Fuerte*, supra, 428 U.S. ——, ——, 96 S.Ct. 3074, 3084, 49 L.Ed.2d 1116, 1130, n. 14. As stated above, it is clear from the record that the primary purpose of the traffic stop in the instant case was to search for liquor law violations.

We hold only that unless authorized by prior judicial warrant, the establishment of a roadblock for the purpose of investigating all motorists for possible liquor law violations constitutes an unconstitutional seizure within the meaning of the Fourth Amendment to the United States Constitution and Article VI, § 11 of the South Dakota Constitution.[2] Nothing we have said herein, of course, should be construed as in any manner limiting the authority of law enforcement officials to apprehend on the basis of the usual standards of probable cause those motorists who are guilty of violating those statutes which prohibit the control or operation of a motor vehicle by one who is under the influence of intoxicants or which prohibit open containers of alcoholic beverages in motor vehicles.

The order appealed from is reversed and the case is remanded to the circuit court with directions to enter an order suppressing the evidence in question.

DUNN, C. J., and WINANS and COLER, JJ., concur.

ZASTROW, J., not having been a member of the Court at the time this case was orally argued, did not participate.

---

**2.** We note that the legislature recently terminated the ASAP program. Ch. 193, Laws of 1976.