THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. FRANCES P. CONWAY, Defendant-Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. TIMOTHY W. RAINEY, Defendant-Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. BRIAN HOFFMAN, Defendant-Appellee.

Fourth District   Nos. 4—84—0841 through 4—84—0843 cons.

Opinion filed August 20, 1985.—Rehearing denied September 19, 1985.

J. William Roberts, State's Attorney, of Springfield (Robert J. Biderman and Kevin T. McClain, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

David K. Harris, of Springfield, for appellees.

JUSTICE MILLS delivered the opinion of the court:
We deal here with the Illinois Secretary of State's anti-drunk-driving enforcement program.

Does a nonselective, all traffic roadblock check run athwart the fourth amendment?

We say no.

We reverse.

The three defendants here—Conway, Rainey, and Hoffman—were charged on separate occasions with driving under the influence after being stopped at roadblocks set up by the Secretary of State police. All three filed motions to suppress evidence for the reason that the roadblocks violated their rights under the fourth amendment.

The cases were consolidated and—after a hearing—the trial court granted the motions to suppress. The State certified that the suppression order substantially impaired its ability to prosecute the defendants and timely filed a notice of appeal.

In 1984, the Secretary of State police set up roadblocks on Route 29 near the intersection of I-55. Conway was arrested on June 2 at 2:50 a.m.; Rainey was arrested on July 20 at 11:25 p.m.; and Hoffman was arrested on July 21 at 3:10 a.m. The roadblocks were part of a Federally funded program of the Secretary of State entitled Anti-Drunk Driving Enforcement Project. The stated objective of the program was to "reduce the incidents of Driving Under Influence (DUI) of alcohol or drugs on Illinois highways."

The roadblocks were characterized by the Secretary of State police as "Driver's License Surveys." Captain Robert Miller of the Secretary of State police testified with respect to the typical procedures followed in setting up and conducting the roadblocks. The sites selected were usually four-lane highways and the roadblock would be set up in two lanes heading the same direction. Warning signs and

traffic cones would be used to slow traffic and funnel it into a single lane. Several police cars would be present with their lights flashing as well as an officer directing traffic.

Five to seven officers would be assisting in the roadblock. Every vehicle which drove through the "survey" was stopped. The motorist was advised of the nature of the stop—a driver's license survey—and was requested to produce his driver's license. The face of the license was examined for its validity and a check of the registration tag on the rear license plate was made. If no violations were apparent, the motorist was allowed to proceed. When a motorist was suspected of being under the influence of alcohol, he was asked to exit the vehicle and perform field sobriety tests.

Captain Robert Hollett, also of the Secretary of State police, testified that if traffic became backed up, and the supervisor on duty perceived the backup created a potential traffic hazard, he could, in his discretion, allow motorists to pass through the survey without being requested to display their driver's license. Captain Miller testified that on the nights defendants were arrested no vehicles passed through the roadblock without a license check being made. (Defendant Conway testified that cars ahead of him were waved through a license check; however, he later stated that the cars may have been temporarily stopped.)

Captain Miller testified that 227 vehicles were stopped at the roadblock in June. Two citations were issued for driving under the influence, two were issued for driver's license violations, and two for registration violations. Three hundred fifty-five vehicles were stopped on the roadblock in July. Four citations were issued for driving under the influence, three were issued for illegal transportation of alcohol, one was issued for a driver's license violation, and two passengers were cited for illegal possession of open alcohol.

The only issue presented in this appeal is whether the roadblock violated the defendants' rights under the fourth amendment.

Our analysis begins with the Supreme Court's decision in *Delaware v. Prouse* (1979), 440 U.S. 648, 59 L. Ed. 2d 660, 99 S. Ct. 1391. There, a police cruiser stopped an automobile occupied by the defendant. The officer testified that he made the stop only to check the driver's license and registration. The officer was not acting pursuant to any standards, guidelines, or procedures pertaining to document spot checks. He stated, "I saw the car in the area and wasn't answering any complaints, so I decided to pull them off." (440 U.S. 648, 650-51, 59 L. Ed. 2d 660, 665, 99 S. Ct. 1391, 1394.) The officer smelled marijuana smoke as he walked towards the stopped vehicle

and seized marijuana in plain view on the car floor.

The trial court in *Prouse* granted the defendant's motion to suppress, and the Supreme Court affirmed. The court held:

"[W]e hold that except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment." (440 U.S. 648, 663, 59 L. Ed. 2d 660, 673, 99 S. Ct. 1391, 1401.)

But the court continued in *dicta*: "This holding does not preclude the State of Delaware or other States from developing methods for spot checks that involve less intrusion or that do not involve the unconstrained exercise of discretion. Questioning of all oncoming traffic at roadblock-type stops is one possible alternative." (440 U.S. 648, 663, 59 L. Ed. 2d 660, 673-74, 99 S. Ct. 1391, 1401.) Justice Blackmun, joined by Justice Powell, concurred, stating: "I necessarily assume that the Court's reservation also includes other not purely random stops (such as every 10th car to pass a given point) that equate with, but are less intrusive than, a 100% roadblock stop." 440 U.S. 648, 664, 59 L. Ed. 2d 660, 674, 99 S. Ct. 1391, 1401.

The court stated in *Prouse* that the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's fourth amendment interest against its promotion of a legitimate governmental interest. In balancing these interests, the court was guided by its decisions in *United States v. Brignoni-Ponce* (1975), 422 U.S. 873, 45 L. Ed. 2d 607, 95 S. Ct. 2574, and *United States v. Martinez-Fuerte* (1976), 428 U.S. 543, 49 L. Ed. 2d 1116, 96 S. Ct. 3074. In *Brignoni-Ponce*, the court held unlawful the practice of the border patrol in conducting roving patrols in areas near the international border to randomly stop vehicles to determine whether they contained illegal aliens or were involved in smuggling operations. In *Martinez-Fuerte*, the court upheld the border patrol practice of slowing all oncoming traffic at a highway roadblock and referring vehicles chosen at the border patrol agent's discretion to an area for a secondary inspection. The "crucial distinction" between *Brignoni-Ponce* and *Martinez-Fuerte* was the "lesser intrusion upon the motorist's Fourth Amendment interests" of the procedure described in *Martinez-Fuerte*. (440 U.S. 648, 656, 59 L. Ed. 2d 660, 669, 99 S. Ct. 1391, 1397.) The court in *Martinez-Fuerte* stated: "This objective intru-

sion—the stop itself, the questioning, and the visual inspection—also existed in roving-patrol stops. But we view checkpoint stops in a different light because the subjective intrusion—the generating of concern or even fright on the part of lawful travelers—is appreciably less in the case of a checkpoint stop." 428 U.S. 543, 558, 49 L. Ed. 2d 1116, 1128, 96 S. Ct. 3074, 3083.

A checkpoint stop by State officials was involved in *United States v. Prichard* (10th Cir. 1981), 645 F.2d 845. The New Mexico State police established a roadblock for the stated purpose of conducting a routine driver's license and car registration check. The officers testified that it was their intent to stop all westbound vehicles, except for semi-trucks, which had already been stopped at a port of entry. When the cars began to pile up, however, the officers would wave all of the stopped cars through in order to prevent the situation from becoming unduly hazardous. The defendants in *Prichard* were charged with possession of cocaine with the intent to distribute after 86 pounds of cocaine were discovered in their vehicle at the roadblock. The court of appeals affirmed the trial court's denial of the defendants' motion to suppress. The court stated:

> "In our view, the roadblock stop of the [defendants' vehicle] does not run afoul of the rule of *Prouse*. While this may not have been a '100% roadblock' of the type referred to in *Prouse*, it is nonetheless a long way from the selective, single car stop denounced in *Prouse*. *** The purpose of the roadblock, *i.e.*, to check drivers' licenses and car registrations, was a legitimate one. *** Furthermore, allowing all the stopped cars through when traffic became congested was also reasonable and, in our view, non-violative of the rule of *Prouse*." 645 F.2d 854, 856-57.

In a case analogous to the appeal before us, we held that the trial court erred in suppressing evidence arising from the defendant's arrest for driving while his license was revoked. (*People v. Lust* (1983), 119 Ill. App. 3d 509, 456 N.E.2d 980.) The arrest occurred after defendant was stopped at a highway safety check of second division vehicles. (See Ill. Rev. Stat. 1983, ch. 95½, par. 1—217.) Although the State trooper at the site intended to stop every second division vehicle, some vehicles were allowed to pass by uninspected to avoid traffic congestion and long waiting periods for the motorists. We determined that the important State interest in the safe highway operation of second division vehicles outweighed the minimal intrusion upon fourth amendment privacy interests caused by the safety check stop.

Defendants in the present case rely primarily on *People v. Bartley* (1984), 125 Ill. App. 3d 575, 466 N.E.2d 346. In *Bartley*, State and

local law enforcement officials set up a checkpoint on a five-lane street in Macomb. The defendant was stopped at the roadblock and arrested for driving under the influence of intoxicating liquor. The trial court granted the defendant's motion to suppress his arrest and the related evidence. The appellate court affirmed.

In balancing the public interest against the interference with the individual's fourth amendment rights, the court in *Bartley* concluded that the government interest in detecting drunk drivers by employing roadblocks did not outweigh the resulting public inconvenience and interference with the individual's constitutional rights. A significant aspect of the court's rationale was its determination that there were less intrusive means of detecting and deterring drunk drivers. These other means were (1) observing driving behavior, and (2) enacting stiffer penalties for drunk driving. The court further noted that the State failed to demonstrate the superiority of a roadblock over the "less intrusive *** means of deterrence." 125 Ill. App. 3d 575, 578, 446 N.E.2d 346, 348.

The State's interest in identifying and apprehending intoxicated and drug-impaired drivers is substantial. Such drivers are a deadly menace to everyone who uses or even passes near the public highways. This interest is at least as weighty as the State's interest in requiring drivers to be properly licensed and to comply with safety regulations. The constitutionality of roadblock surveys to promote the latter purposes has been suggested by the Supreme Court in *Prouse* and expressly upheld by the circuit court of appeals in *Prichard*. The procedures by which the State conducted its driver's license survey in the present case was no more intrusive than the roadblock in *Prichard*. Because the State's interest is at least as great as that involved in *Prouse* and *Prichard* and the procedures employed were no more intrusive, we find that the driver's license survey employed in the present case did not violate defendants' constitutional rights.

We disagree with the court's conclusion in *Bartley* that the State's interest may be adequately promoted by the less intrusive means of direct observation of driving behavior and the enactment of stiffer penalties. The argument that stiffer penalties constitute adequate and less intrusive means of promoting the State's interest can be discounted at the outset. This argument could be made in every case and specifically in the case where the sole purpose of the roadblock is to discover driver's license violations and safety violations. The argument presumably carried no weight in *Prichard*, and we accord it the same here. Moreover, we are not prepared to find that, because drunk and drug-impaired drivers occasionally commit their of-

fenses within the view of police officers, the State should be prohibited from implementing alternative and more effective means of identifying and apprehending these violators.

As there was no controlling authority from this district, the trial court properly followed *Bartley*. Having now decided the question, we must reverse the court's decision.

Reversed.

WEBBER and McCULLOUGH, JJ., concur.