483 So.2d 433 (1986)
STATE of Florida, Petitioner,
v.
Ronald Dean JONES, Respondent.
No. 66373.
Supreme Court of Florida.
February 20, 1986.
*434 Jim Smith, Atty. Gen., and William I. Munsey, Jr., Asst. Atty. Gen., Tampa, for petitioner.
Walter O. Hobbs, II of Harry M. Hobbs, P.A., Tampa, for respondent.
McDONALD, Justice.
The Second District Court of Appeal has certified the following question as being one of great public importance:
Can a warrantless temporary roadblock which is established to apprehend persons driving while under the influence of alcohol and which stops automobiles without any articulable suspicion of illegal activity produce constitutionally permissible arrests?
Jones v. State, 459 So.2d 1068, 1081 (Fla. 2d DCA 1984). This Court has jurisdiction pursuant to article V, section 3(b)(4), Florida Constitution. We answer in the affirmative, but, based on the record in this case, approve the result reached by the district court.
The City of Tampa Police Department arrested Jones for driving while under the influence of alcoholic beverages (DUI), a violation of section 316.193, Florida Statutes (1981). The Tampa police established a roadblock on July 4, 1982, at about 2:30 a.m. for the admitted purpose of apprehending DUI drivers. The police blocked the three northbound lanes of Dale Mabry Highway to form a funnel, requiring all traffic to travel in one lane and to pass an officer stationed on the roadway. That officer had instructions to stop every fifth automobile during heavy traffic and every third automobile during light traffic. The officer directed the stopped cars off the roadway into a parking lot. Five police officers stationed in the parking lot determined if the drivers were DUI. Jones drove a car which the police diverted into the lot. After requesting Jones' driver's license, the arresting officer determined Jones was DUI. After Jones failed several *435 field sobriety tests, the police took him into custody.
Jones initially entered a plea of not guilty and filed a pretrial motion to suppress all evidence obtained as a result of what he contended to be an illegal seizure. The court denied the motion. He then entered a plea of nolo contendere, specifically reserving the right to appeal the denial of the suppression motion. Jones appealed to the circuit court, which affirmed both the judgment and the sentence. On certiorari the Second District Court of Appeal quashed the circuit court's affirmance and reversed the conviction. The district court ruled that the roadblock violated Jones' fourth amendment rights against unreasonable search and seizure.
The state subsequently filed both a motion to stay mandate and a motion for rehearing, en banc. The district court denied both motions. This Court has likewise declined to review the order denying the stay.
Unquestionably, stopping an automobile and detaining its occupant constitutes a seizure within the meaning of the fourth amendment to the United States Constitution.[1]Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); United States v. Martinez-Fuerte, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976). As with all warrantless searches and seizures, courts determine the constitutionality of DUI roadblocks by balancing the legitimate government interests involved against the degree of intrustion on the individual's fourth amendment rights. Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); Prouse, 440 U.S. at 656-57, 99 S.Ct. at 1397-98; Martinez-Fuerte, 428 U.S. at 555, 96 S.Ct. at 3081; Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State ex rel. Ekstrom v. Justice Court, 136 Ariz. 1, 663 P.2d 992 (1983); Webb v. State, 695 S.W.2d 676 (Tex. Crim. App. 1985). This balancing test involves three considerations: (1) the gravity of the public concern that the seizure serves; (2) the degree to which the seizure advances the public interest; and (3) the severity of the interference with individual liberty. Brown, 443 U.S. at 50-51, 99 S.Ct. at 2640-2641; State v. Superior Court In & For County of Pima, 143 Ariz. 45, 691 P.2d 1073 (1984); State v. Deskins, 234 Kan. 529, 673 P.2d 1174 (1983); Webb, 695 S.W.2d at 678; People v. Bartley, 125 Ill. App.3d 575, 80 Ill.Dec. 894, 466 N.E.2d 346 (1984). While the United States Supreme Court has never directly addressed the issue before this Court, several decisions of our nation's highest court provide some guidance in our attempt to apply fourth amendment principles to the case at bar.
In Delaware v. Prouse the United States Supreme Court addressed the constitutionality of license spot checks. In Prouse a Delaware police officer stopped Prouse's automobile for the sole purpose of conducting a license and registration check. The officer had not observed any suspicious activity or any traffic violations on the part of the vehicle's occupants prior to stopping the automobile. Upon stopping the car, however, the police officer discovered marijuana in the vehicle and arrested Prouse for possession of a controlled substance. 440 U.S. at 650-51, 99 S.Ct. at 1394-95. In reversing Prouse's conviction the Supreme Court ruled that such "roving patrols" violated *436 the fourth amendment. Id. at 655, 663, 99 S.Ct. at 1397, 1401. The Court reasoned that to rule otherwise would invite unbridled intrusions upon constitutionally guaranteed rights based solely on unsubstantiated hunches. In dicta, however, the Court limited its holding by stating:
This holding does not preclude the State of Delaware or other states from developing methods for spot checks that involve less intrusion or that do not involve the unconstrained exercise of discretion. Questioning of all oncoming traffic at roadblock stops is one possible alternative.
Id. at 663, 99 S.Ct. at 1401. The concurring opinion of Justice Blackmun then added, "I necessarily assume that the Court's reservation also includes other not purely random stops (such as every 10th car to pass a given point) that equate with, but are less intrusive than, a 100% roadblock stop." Id. at 664, 99 S.Ct. at 1401 (Blackmun, J., concurring). Law enforcement agencies in many states have relied upon this dicta as authority supporting DUI roadblocks. See Deskins, 234 Kan. at 533, 673 P.2d at 1179; Commonwealth v. McGeoghegan, 389 Mass. 137, 449 N.E.2d 349 (1983); People v. Conway, 135 Ill. App.3d 887, 90 Ill.Dec. 618, 482 N.E.2d 437 (1985); Webb, 695 S.W.2d at 680; Superior Court In & For County of Pima, 143 Ariz. at 48, 691 P.2d at 1076; State v. McLaughlin, 471 N.E.2d 1125 (Ind. App. 1984).
In contrast to the roving patrol type of warrantless stop struck down in Prouse, the Supreme Court approved a permanent roadblock at a border patrol checkpoint along the Mexican border in United States v. Martinez-Fuerte, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 116 (1976). The checkpoint aided in apprehending illegal aliens, and law enforcement officers stopped every vehicle at the checkpoint for brief questioning. In sustaining the border outpost against a fourth amendment attack, the Court emphasized a number of the checkpoint's characteristics. These characteristics included its permanency, the presence of lighted warning signs well in advance of the stop, the presence of uniformed officers, and the fact that supervisory officials decided to establish the checkpoint. The Court reasoned that, because motorists received warnings about the roadblock well in advance, they would be less frightened when stopped. The Court surmised that this appreciably reduced the subjective intrusion upon the motorists' liberty rights. Id. at 559, 96 S.Ct. at 3083.
Clearly, the roadblock at issue in the case at bar falls somewhere between the roving patrol struck down in Prouse and the permanent checkpoint approved in Martinez-Fuerte. While the dicta in Prouse concerning roadblocks lends some guidance to the analysis, states have had a difficult struggle determining both where the cutoff point for constitutionality lies and exactly where a given roadblock falls on the Prouse/Martinez-Fuerte continuum.
We note at the beginning of our analysis that, while the instant case deals with an issue of first impression in Florida, an increasing number of our sister states has dealt with the constitutionality of DUI roadblocks. According to the district court, when that court rendered its opinion only five states had directly addressed the constitutionality of DUI roadblocks of varying descriptions.[2] Today a survey of other jurisdictions indicates that we can add at least nine more states to this list. As with the previous five states, these courts have reached a variety of results.[3]
*437 These cases have considered numerous conditions and factors in determining whether a given roadblock passes constitutional muster. The second district discussed in significant detail several of the landmark DUI roadblock cases decided in other jurisdictions. A repetition here of that case-by-case analysis would add little. Indeed, the recent proliferation of DUI roadblock cases decided across the country indicates little uniformity in the approaches taken in analyzing these stops. Different courts have assigned different weights to the various factors involved in the fourth amendment balancing test. Certain considerations, however, have been consistently stressed, albeit with varying results.
In the case at bar the district court assimilated a number of these cases and formulated a set of criteria for use in determining whether a given roadblock satisfies the constitution. The district court embraced the criteria adopted in State v. Deskins, 234 Kan. 529, 673 P.2d 1174 (1983), a Kansas case which the opinion below discussed extensively. In this respect the district court appears to have fallen into line with a growing number of courts from other states which are utilizing the Deskins criteria as a helpful framework for analyzing the constitutional viability of specific DUI roadblocks. See Webb, 695 S.W.2d at 681; McLaughlin, 471 N.E.2d at 1135-36; Little, 300 Md. at 498, 479 A.2d at 911-12. As the district court stated, these criteria include:
(a) degree of discretion left to field officers; (b) location, time and duration of the roadblock; (c) standards set by superior officers; (d) advance notice to public; (e) warning to approaching motorists; (f) degree of fear or anxiety caused; (g) length of detention of each motorist; (h) safety conditions; (i) physical factors of the method of operation; (j) availability of less intrusive methods for combating the problem; (k) effectiveness of the procedure; (l) any other relevant circumstances.
459 So.2d at 1077.
In the case at bar the district court, attempting to offer some guidance through this amorphous area, specified which of these criteria it considered most important. The critical considerations included: (1) whether the law enforcement agency conducted the roadblock pursuant to a plan which supervisory personnel formulated and which substantially restricted the discretion of field officers as to both operating procedures and the selection of vehicles; (2) whether the roadblock procedures assured the safety of motorists through the use of proper means such as adequate lighting, warning signs or signals, and clearly identifiable police officers; (3) the degree of intrusion upon motorists and the length of the detention of each motorist; and (4) whether the roadblock procedures proved significantly more effective in combating an egregious law enforcement problem than other available less intrusive means. The court also indicated that where a roadblock was temporary courts should require some sort of advance *438 notice to the public in order to reduce the fear and surprise involved when law enforcement officers suddenly stop a passing motorist. 459 So.2d at 1079. Clearly, not all of these factors must favor the state in order to validate a sobriety checkpoint. Deskins, 234 Kan. at 541, 673 P.2d at 1185; Webb, 695 S.W.2d at 681; McLaughlin, 471 N.E.2d at 1136. On the other hand, some factors can prove fatal to a roadblock regardless of the existence of other favorable conditions. Deskins, 234 Kan. at 541, 673 P.2d at 1185; Webb, 695 S.W.2d at 681; McLaughlin, 471 N.E.2d at 1136. Before we apply the balancing test to the case at bar, we will proceed to examine the criteria which the district court stressed.
Paramount among all other considerations, the fourth amendment requires that all seizures be based on either: (1) specific evidence of an existing violation; (2) a showing that reasonable legislative or administrative inspection standards are met; or (3) a showing that officers carry out the search pursuant to a plan embodying specific neutral criteria which limit the conduct of the individual officers. Brown, 443 U.S. at 51, 99 S.Ct. at 2641; Webb, 695 S.W.2d at 678; McLaughlin, 471 N.E.2d at 1134. Because DUI roadblocks involve seizures made without any articulable suspicion of illegal activity, most states examining this issue have ruled that such roadblocks stand or fall based on some set of neutral criteria governing the officers in the field. See Superior Court In & For County of Pima, 143 Ariz. at 47, 691 P.2d at 1075, 1077 (approval of roadblock set up with detailed instructions to reduce discretion of field officers); Deskins, 234 Kan. at 541, 673 P.2d at 1185 (unbridled discretion of field officers would run afoul of Prouse regardless of other favorable factors); Webb, 695 S.W.2d at 681 (unbridled discretion would violate Prouse regardless of other factors); McLaughlin, 471 N.E.2d at 1139 (level of discretion left to officers executing seizures can be a factor of overriding importance); Kinslow v. Commonwealth, 660 S.W.2d 677 (Ky. Ct. App. 1983), cert. denied, 465 U.S. 1105, 104 S.Ct. 1606, 80 L.Ed.2d 136 (1984) (key factor is that all vehicles were stopped, thereby limiting discretion of officers). Courts requiring such a neutral plan do so out of a fear that unbridled discretion in the field invites abuse. We agree and find that it is essential that a written set of uniform guidelines be issued before a roadblock can be utilized.
Law enforcement officials must conduct sobriety checkpoints so as to minimize the discretion of field officers, thereby restricting the potential intrusion into the public's constitutional liberties. Written guidelines should cover in detail the procedures which field officers are to follow at the roadblock. Ideally, these guidelines should set out with reasonable specificity procedures regarding the selection of vehicles, detention techniques, duty assignments, and the disposition of vehicles. See Deskins, 234 Kan. at 542, 673 P.2d at 1185; State ex rel. Ekstrom, 136 Ariz. at 9, 663 P.2d at 1000 (Feldman, J., concurring); Webb, 695 S.W.2d at 681. See also Westendorf & Westendorf, The Prouse Dicta: From Random Stops to Sobriety Checkpoints?, 20 Idaho L.Rev. 127, 154-56 (1984). Of course, if the guidelines fail to cover each of these matters they need not necessarily fail. Rather, courts should view each set of guidelines as a whole when determining the plan's sufficiency.
Moreover, in our view roadblocks need not stop every car in order to avoid running afoul of Prouse. While a roadblock stopping every third or fifth automobile may not equal the 100 percent roadblock referred to in the Prouse majority opinion, such a roadblock is nonetheless a long way from the selective vehicle stop denounced in Prouse. United States v. Prichard, 645 F.2d 854 (10th Cir.), cert. denied, 454 U.S. 832, 102 S.Ct. 130, 70 L.Ed.2d 110 (1981); State v. Coccomo, 177 N.J. Super. 575, 427 A.2d 131 (1980). See Prouse, 440 U.S. at 663-64, 99 S.Ct. at 1401-02 (Blackmun, J., concurring) ("I necessarily assume that the Court's reservation also includes other not purely random stops (such as every 10th car to pass a *439 given point) that equate with, but are less intrusive than, a 100% roadblock stop.").
We also agree with the district court that the procedures followed at a given roadblock are extremely important when determining the checkpoint's constitutionality. Police should provide both proper lighting and sufficient warning on the roadway in advance of the stop so as to reduce the threat of startling the driver. Failing to do so would increase the threat of traffic accidents at the roadblock and thereby frustrate the entire goal of the checkpoint.
Additionally, law enforcement officers at the checkpoint should be easily identifiable. Visible signs of authority such as police uniforms reduce the potential for frightening motorists who may otherwise fear pulling off the road late at night at the order of strangers. Police should present enough vestiges of authority to allay such fears.
We also agree with the district court that law enforcement officials should keep the degree of intrusion upon motorists and the length of detention of each driver to a minimum. Accordingly, police should use the guidelines discussed above to streamline procedures. The public, however, must keep in mind that the privilege of driving an automobile over public highways does not amount to an absolute organic right. Jones v. Kirkman, 138 So.2d 513 (Fla. 1962). Our government provides the roadways of Florida as a benefit to the public at large. Accordingly, this state retains extensive authority to safeguard the driving public via its police power. Lasky v. State Farm Insurance Co., 296 So.2d 9 (Fla. 1974); State ex rel. Nelson v. Quigg, 143 Fla. 227, 196 So. 417 (1940). If the holder of a driver's license cannot utilize the privilege of driving on our public streets and highways in a careful manner and respect the rights of others to do likewise, that driver becomes a public nuisance and should be either temporarily or permanently excluded from those roads. Thornhill v. Kirkman, 62 So.2d 740 (Fla. 1953). In order to safeguard Floridians against such drivers, motorists should reasonably accept the minor inconvenience which they may endure at a properly run DUI roadblock.
We do not agree with the district court that it is essential to have prior public dissemination of roadblock information. We do not mean to discourage the police from making nonspecific announcements, if they choose to do so, concerning their intent to establish sobriety check points for the giving of this information would reduce claims of unlawful seizure. Such announcements, however, are unnecessary where the police position signs and lights at the checkpoint giving approaching drivers notice of the roadblock's purpose pursuant to a written plan.
As for the remainder of the factors listed above, their cumulative use would prove helpful in determining the validity of a given DUI roadblock. Therefore, we follow many of our sister states in adopting the bulk of the Deskins criteria. We also agree with the district court in stressing the four principal criteria which we discussed in some detail above, except for the requirement of advance public notice mentioned by both the instant district court and the Deskins court.
The record in this case requires us to rule that the state failed to prove that the City of Tampa roadblock procedure met the balancing test mandated in Brown and therefore violates the requirements of the fourth amendment to the United States Constitution. We stress, however, that, when the record in a given case adequately reflects that a roadblock procedure satisfies the criteria discussed above, such a roadblock would likely pass constitutional muster. The state's compelling interest in protecting the public from drunk drivers outweighs any minimal intrusion into their privacy which a proper roadblock procedure might cause.
We therefore answer the certified question in the affirmative, but approve the result of the district court below.
It is so ordered.
BOYD, C.J., and ADKINS, OVERTON, EHRLICH and SHAW, JJ., concur.
NOTES
[1] As a preface, we point out that the parties have failed to present any valid arguments concerning the applicability of article I, section 12 of the Florida Constitution. The state contends that Florida's Constitution has adopted the federal case law interpreting the fourth amendment of the United States Constitution and, therefore, affords identical protection as that of the federal constitution. The state, however, errs in relying on the language of the 1983 amendment to article I, section 12 as authority for that position. As this Court held in State v. Lavazzoli, 434 So.2d 321 (Fla. 1983), the 1983 amendment cannot be applied retroactively. Because Jones was arrested prior to January 1, 1983, the effective date of the amendment, the amended language of article I, section 12 is inapplicable and the pre-1983 language prevails. Neither the parties nor the court below, however, presented any justification for applying different standards under the applicable provisions of the United States and Florida Constitutions. Because this issue has been neither briefed nor argued in the present petition, the decision in the instant case rests solely on the federal constitution.
[2] Massachusetts, South Dakota, and Arizona held that the roadblocks in question violated the fourth amendment. Kansas and New Jersey held that the roadblocks were proper. 459 So.2d at 1070.
[3] Of these nine states four upheld such roadblocks, four states found them unconstitutional, and Illinois in separate cases struck down one procedure and upheld another. State v. Koppel, 499 A.2d 977 (N.H.Sup.Ct. 1985) (drunk driving roadblock violates the state constitution's counterpart to the fourth amendment); People v. Scott, 63 N.Y.2d 518, 483 N.Y.S.2d 649, 473 N.E.2d 1 (1984) (DUI roadblock prevails in balancing test); Little v. State, 300 Md. 485, 479 A.2d 903 (1984) (DUI roadblock does not violate the fourth amendment); People v. Conway, 135 Ill. App.3d 887, 90 Ill.Dec. 618, 482 N.E.2d 437 (1985) (traffic roadblock check does not violate the fourth amendment); Webb v. State, 695 S.W.2d 676 (Tex. Crim. App. 1985) (roadblock stop was unreasonable and violated the fourth amendment); State v. McLaughlin, 471 N.E.2d 1125 (Ind. App. 1984) (state failed to meet its burden of proving reasonableness of DUI roadblock under fourth amendment balancing test); People v. Bartley, 125 Ill. App.3d 575, 80 Ill.Dec. 894, 466 N.E.2d 346 (1984) (roadblock established to detain all traffic for the purpose of screening out drunk drivers is unconstitutional); People v. Peil, 122 Misc.2d 617, 471 N.Y.S.2d 532 (N.Y. Crim. Ct. 1984); State v. Smith, 674 P.2d 562 (Okla.Cr. 1984) (temporary roadblock violates fourth amendment); Kinslow v. Commonwealth, 660 S.W.2d 677 (Ky. Ct. App. 1983), cert. denied, 465 U.S. 1105, 104 S.Ct. 1606, 80 L.Ed.2d 136 (1984); Idaho v. Baker, No. 24-6693-82 (Idaho 7th Dist.Magis.Ct. May 11, 1983) (roadblock passes fourth amendment scrutiny). In addition, the Arizona Supreme Court has re-examined the DUI roadblock question which it previously dealt with in State ex rel. Ekstrom v. Justice Court, 136 Ariz. 1, 663 P.2d 992 (1983), this time upholding a more strictly controlled procedure in Pima County. State v. Superior Court In & For County of Pima, 143 Ariz. 45, 691 P.2d 1073 (1984). The Massachusetts Supreme Court has likewise taken a second look at roadblocks, this time approving a sobriety checkpoint run in accordance with a specific set of uniform guidelines. Commonwealth v. Trumble, 396 Mass. 81, 483 N.E.2d 1102 (1985).