VAN NORTWICK, Judge,
dissenting.
Because I conclude that the stop of Campbell at the “police traffic safety stop” was an unreasonable search and seizure under federal and state constitutional law, I must respectfully dissent.
The pivotal issue in this case is whether the “police traffic safety stop,” a roadblock, is constitutionally valid under the Fourth Amendment of the United States Constitution.[2] As the majority opinion recognizes, a Fourth Amendment “seizure” occurs when a vehicle is stopped at a roadblock. United States v. Martinez-Fuerte, 428 U.S. 543, 556, 96 S.Ct. 3074, 3082, 49 L.Ed.2d 1116 (1976) (“It is agreed that checkpoint stops are ‘seizures’ within the meaning of the Fourth Amendment”). The question then becomes whether this particular seizure is “reasonable” under the Fourth Amendment. This court’s opinion properly attempts to determine the constitutional reasonableness of the subject roadblock by balancing the legitimate state interest advanced by the roadblock against the magnitude of the intrusion of an individual’s privacy caused by the roadblock using the three-prong balancing test derived from the opinion of the United States Supreme Court in Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). As stated by the Florida Supreme Court, the Brown balancing test:
... involves three considerations: (1) the gravity of the public concern that the seizure serves; (2) the degree to which the seizure advances the public interest; and (3) the severity of the interference with individual liberty.
State v. Jones, 483 So.2d 433, 435 (Fla.1986).
In my view, the majority opinion errs in its application of this balancing test primarily because it fails to recognize the severity of the interference with individual liberty created by the broad discretion granted the police officers in carrying out the roadblock in this case. After all, “[a] central concern in balancing these competing considerations in a variety of settings has been to assure that an individual’s reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field.” Brown, 443 U.S. at 51, 99 S.Ct. at 2640. The limited written police directives used in the present case do not limit police discretion and fall short of the discretion- *285 limiting “written set of uniform guidelines” specifically required by the Florida Supreme Court in State v. Jones, 483 So.2d at 438, and implicitly approved by the United States Supreme Court in Michigan Department of State Police v. Sitz, 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990). In applying the Brown balancing test, this lack of appropriate written guidelines is particularly important because, as I see it, the state interest expressly advanced by the present roadblock, vehicle safety and driver education, is substantially less compelling than the state interests of preventing driving under the influence of alcohol, drug interdiction and detection of illegal aliens, advanced in other roadblock eases; and the state presented no empirical evidence below supporting the effectiveness of a roadblock in advancing vehicle safety and driver education.
My view of the appropriate application of the Brown balancing test and State v. Jones to the present case follows.

Severity of Interference with Individual Liberty

The facts of this case require that we first focus on the third of the Brown considerations, the severity of this roadblock’s interference with individual liberty. The central consideration in this prong of the Brown balancing test is whether the written directives given the police officers carrying out the instant roadblock satisfy constitutional requirements for neutral criteria limiting police discretion. Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979).
Roadblocks interfere with a citizen’s liberty to drive an automobile freely and in privacy. As described by Justice White in Prouse:
An individual operating or traveling in an automobile does not lose all reasonable expectation of privacy simply because the automobile and its use are subject to government regulation. Automobile travel is a basic, pervasive, and often necessary mode of transportation to and from one’s home, workplace and leisure activities. Many people spend more hours each day traveling in cars than walking on the streets. Undoubtedly, many find a greater sense of security and privacy in traveling in an automobile than they do in exposing themselves by pedestrian or other modes of travel. Were the individual subject to unfettered governmental intrusion every time he entered an automobile, the security guaranteed by the Fourth Amendment would be seriously circumscribed.
Id., 440 U.S. at 662-663, 99 S.Ct. at 1400-1401. Recognizing our society’s abhorrence of government’s intrusion on an individual’s freedom of movement, Justice Brennan described a roadblock as “a dragnet-like procedure offensive to the sensibilities of free citizens.” Martinez-Fuerte, 428 U.S. at 571, 96 S.Ct. at 3089 (Brennan, J., dissenting). And others have observed that roadblocks and similar “displays of police power ‘are the hallmark of authoritarian regimes’ in other countries.” Nadine Strossen, The Fourth Amendment in the Balance: Accurately Setting the Scales Through the Least Intrusive Alternative Analysis, 63 N.Y.U.L.Rev. 1173, 1197 n. 116 (1988), quoting Jacobs and Stros-sen, Mass Investigations Without Individualized Suspicion: A Constitutional and Policy Critique of Drunk Driving Roadblocks, 18 U.C.Davis L.Rev. 595 (1985).
The United States and Florida Supreme Courts both find that the degree of intrusion on liberty imposed by a roadblock is related to the amount of discretion possessed by the police officers carrying out the roadblock. In recognition of the “grave danger that ... unreviewable discretion would be abused by some officers in the field,” Martinez-Fuerte, 428 U.S. at 559, 96 S.Ct. at 3083, for a roadblock to survive constitutional scrutiny under the Fourth Amendment, the Court in Prouse required either a factual basis for suspicion or the existence of objective standards governing the exercise of discretion. The Prouse court stated:
The marginal contribution to roadway safety possibly resulting from a system of spot checks cannot justify subjecting every occupant of every vehicle on the roads to a seizure — limited in magnitude compared to other intrusions but nonetheless constitutionally cognizable — at the unbridled discretion of law enforcement officials. To insist neither upon an appropriate factual basis for suspicion directed at a particular *286 automobile nor upon some other substantial and objective standard or rule to govern the exercise of discretion “would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches-’ Terry v. Ohio, 392 U.S. [1], at 22, 88 S.Ct. [1868], at 1880 [20 L.Ed.2d 889 (1968) ].
Prouse, 440 U.S. at 661, 99 S.Ct. at 1400.
As the majority opinion recognizes, the Florida Supreme Court in State v. Jones, supra, required law enforcement officials conducting a sobriety roadblock to minimize the discretion of field officers by issuing in advance written uniform guidelines covering the detailed procedures to be used in the roadblock. As described in State v. Jones, the police blocked all northbound lanes of a roadway thereby requiring all traffic to funnel into one lane and to pass an officer stationed on the roadway. The officer had instructions to stop and divert every fifth automobile during heavy traffic and every third automobile during light traffic. Jones’ car was stopped and diverted and, Jones thereafter failed several field sobriety tests. Following his arrest, Jones filed a pretrial motion to suppress all evidence obtained as a result of the allegedly illegal seizure. The trial court denied the motion. Jones entered a plea of nolo contendere, specially reserving the right to appeal the denial of the suppression motion. Jones appealed to the circuit court, which affirmed his conviction. On cer-tiorari, the Second District Court of Appeal quashed the circuit court’s affirmance and reversed the conviction, ruling that roadblock violated Jones’ Fourth Amendment right to be free from an unreasonable search and seizure. In addition, the district court certified the following question as being one of great public interest:
Can a warrantless temporary roadblock which is established to apprehend persons driving while under the influence of alcohol and which stops automobiles without any articulable suspicion of illegal activity produce constitutionally permissible arrests?
Jones v. State, 459 So.2d 1068, 1081 (Fla. 2d DCA 1984), approved sub. nom. State v. Jones, supra.
Although answering the certified question in the affirmative, the Supreme Court in State v. Jones approved the opinion of the district court because:
[t]he record in this case requires us to rule that the state failed to prove that the City of Tampa roadblock procedure met the balancing test in Brown and therefore violates the requirements of the fourth amendment to the United States Constitution.
483 So.2d at 439. In reaching this holding, the court engaged in an extensive analysis of the criteria used by other courts to determine “whether a given roadblock satisfies the constitution.” Id. at 437. The court then summarized its conclusions as follows:
Paramount among all other considerations, the fourth amendment requires that all seizures be based on either: (1) specific evidence of an existing violation; (2) a showing that reasonable legislative or administrative inspection standards are met; or (3) a showing that officers carry out the search pursuant to a plan embodying specific neutral criteria which limit the conduct of the individual officers. Because DUI roadblocks involve seizures made without any articulable suspicion of illegal activity, most states examining this issue have ruled that such roadblocks stand or fall based an some set of neutral criteria governing the officers in the field. Courts requiring such a neutral plan do so out of a fear that unbridled discretion in the field invites abuse.
Id. at 438 (citations omitted; emphasis added).
Based on these criteria, the State v. Jones court held that detailed written guidelines governing the officers in the field are mandated for a roadblock to satisfy Fourth Amendment requirements, stating:
We ... find that it is essential that a written set of uniform guidelines be issued before a roadblock can be utilized.
Law enforcement officials must conduct sobriety checkpoints so as to minimize the discretion of field officers, thereby restricting the potential intrusion into the public’s constitutional liberties. Written guidelines should cover in detail the procedures *287 which field officers are to follow at the roadblock. Ideally, these guidelines should set out with reasonable specificity procedures regarding the selection of vehicles, detention techniques, duty assignments, and the disposition of vehicles.
Id. (citations omitted; emphasis added).
In affirming the trial court in the instant case, the majority opinion alternatively, first, finds that the documentation used by the police officials below satisfied the State v. Jones requirement for written guidelines; and, second, concludes that the written guidelines requirement in State v. Jones is no longer viable. I respectfully submit that both of these conclusions are in error.
With respect to whether the written documentation below complied with the Jones requirements for written guidelines, I must conclude after reviewing the record that the limited written instructions issued to the police officers implementing the roadblock below are clearly insufficient under Jones. Here, the sheriff’s office issued an operational order that covered all safety check deployments generally. The operational order, however, did not contain guidelines restricting the discretion of the field officers, but required that specific, restrictive procedures be adopted in a “directed patrol worksheet” prior to establishing a roadblock. The operational order required that the directed patrol worksheet set forth various detailed procedures, including the following:
In the event a safety check deployment is utilized, the following procedures shall apply:
1. The supervisor of the proposed operation shall initiate a Directed Patrol Worksheet (P-883), showing themselves as the tactical leader of said operation; and
2. The supervisor completing the Directed Patrol Worksheet should be aware that the safety check deployment must be conducted in such a manner as to eliminate the discretion of the officers in the field. Thus, the Directed Patrol Worksheet should contain the following guidelines in the “Description of Strategy” section in an effort to accomplish this:
a. Procedures regarding the selection of vehicles (i.e., officers will check every third vehicle or every fifth vehicle, etc.);
b. Detention Techniques — Officers shall have the driver pull over, out of traffic for safety reasons and conduct the appropriate investigation; and
c. Duty Assignments — AH officers involved should have specific duty assignments while conducting the safety check deployment and these should be noted on the worksheet. (Emphasis added).
Obviously, the operational order intended the directed patrol worksheet to be prepared with an eye towards compliance with State v. Jones, since it requires that the worksheet’s written procedures to “eliminate discretion of the officers in the field.” In the present ease, however, the very limited instructions spelled out in the directed patrol worksheet fail to satisfy not only the express requirements of the sheriffs operational order, but the requirements of State v. Jones as well. The entire text of the instructions governing the roadblock in the instant case are set forth under “strategy” in the directed patrol worksheet, as follows:
Stop motorists on Mandarin Road for a traffic safety cheek. Have a motorcycle with radar on each end of the check to monitor speed.
Perhaps most critical to the State v. Jones analysis in this case is the fact that the worksheet fails to specify any written vehicle selection procedures to govern the officers in the field. For example, the limited written “strategy” contains no indication whether the officers were to stop all motorists, or only one in three or one in five vehicles, or were to use some other selection criteria. Further, the written instructions set forth no duty assignments, no detention techniques, and no procedures for disposition of vehicles, contrary to the express requirements of State v. Jones, 483 So.2d at 438. Although, as noted by the majority opinion in the present case, the supreme court indicated that the State v. Jones requirements were not inelastic (“... if the guidelines fail to cover each of these matters they need not necessarily fail. Rather, courts should view each set of guidelines as a whole when determin- *288 mg the plan’s sufficiency.” Id.), the constitutional sufficiency of -written procedures should be determined based upon the extent to which the procedures serve as “neutral criteria governing the officers in the field,” id., and “minimize the discretion of the field officer.” Id. Not only does this directed patrol worksheet contain none of the procedures specified in State v. Jones, but it sets forth no governing procedures whatsoever. Clearly, it cannot reasonably be seen as a limitation on police discretion. In addition, although additional oral instructions were given in the field, those instructions were similar to the oral instructions to stop every fifth vehicle found inadequate in State v. Jones, id. at 435. Moreover, even if officers carrying out the instant roadblock were instructed orally to stop every car, that instruction was neither reduced to writing nor uniformly obeyed, since the record reflects that officers on the scene used unbridled discretion to wave cars through the roadblock unchecked. In my opinion, the lack of any reasonably specific written guidelines to limit the field officer’s discretion in this roadblock renders Campbell’s stop fatally defective under the Fourth Amendment to the United States Constitution and Article I, section 12 of the Florida Constitution. State v. Jones, id. at 438.
With respect to the continuing viability of the State v. Jones requirement for written guidelines, as I read the majority opinion in the present ease, the majority concludes that State v. Jones is no longer viable because: (i) State v. Jones applied law in effect prior to the effective date of the 1983 amendment to article I, section 12 of the Florida Constitution; (ii) the 1983 amendment required Florida courts to interpret article I, section 12 “in conformity with the Fourth Amendment to the United States Constitution, as interpreted by the United States Supreme Court;” and (iii) the United States Supreme Court has not specifically indicated that written standards for a roadblock are necessary. However, the fact that State v. Jones applies the pre-1983 version of article I, section 12 of the Florida Constitution does not vitiate the State v. Jones holding. By its own words, the decision in State v. Jones “rests solely on the federal constitution,” 483 So.2d at 435 n. 1, as would have been required by the 1983 amendment to article I, section 12. As a result, in my opinion, State v. Jones remains the law of Florida even after the 1983 amendment.
This reading of State v. Jones has been adopted by the Fourth District Court of Appeal in Hartsfield v. State, 629 So.2d 1020 (Fla. 4th DCA 1993). In Hartsfield, the district court, reversing the denial of a suppression motion in a sobriety roadblock case, held that “[t]he absence of specific written guidelines renders the roadblock operation fatally defective under State v. Jones.” Id. at 1021. Although the majority opinion here attempts to distinguish Hartsfield because the evidence there did not establish that any of the operating procedures used for the roadblock were in written form, to the extent the majority opinion in the present case concludes that the State v. Jones requirement of detailed written guidelines is no longer viable, it nevertheless directly conflicts with Hartsfield.
Further, I believe that the majority opinion is mistaken when it concludes that written guidelines are not required by Fourth Amendment law as established by the United States Supreme Court. In Michigan Department of State Police v. Sitz, supra, in which the Court upheld the constitutionality of Michigan’s use of sobriety checkpoints, the Court was considering a sobriety checkpoint established under detailed statewide written guidelines. The Michigan Legislature established a drunk driving task force which was operated under the direction of the Michigan Department of State Police. This task force recommended the implementation of sobriety checkpoints on public highways as one method of combating alcohol-related traffic accidents. Based on the task force’s recommendation, the Michigan governor then directed the State Police to implement a sobriety checkpoint program. Sitz v. Department of State Police, 170 Mich.App. 433, 429 N.W.2d 180, 181 (1988). The U.S. Supreme Court described the program and resulting guidelines as follows:
Petitioners, the Michigan Department of State Police and its director, established a sobriety checkpoint pilot program in early *289 1986. The director appointed a Sobriety Checkpoint Advisory Committee comprising representatives of the State Police force, local police forces, state prosecutors, and the University of Michigan Transportation Research Institute. Pursuant to its charge, the advisory committee created guidelines setting forth procedures governing checkpoint operations, site selection, and publicity.
Under the guidelines, checkpoints would be set up at selected sites along state roads. All vehicles passing through a checkpoint would be stopped and their drivers briefly examined for signs of intoxication. In cases where a checkpoint officer detected signs of intoxication, the motorist would be directed to a location out of the traffic flow where an officer would check the motorist’s driver’s license and car registration and, if warranted, conduct further sobriety tests. Should the field tests and the officer’s observations suggest that the driver was intoxicated, an arrest would be made. All other drivers would be permitted to resume their journey immediately.
Sitz, 496 U.S. at 447, 110 S.Ct. at 2483-2484.
The Court never questioned the Michigan guidelines and, in concluding that the Sitz “sobriety checkpoint is for constitutional purposes indistinguishable from the checkpoint stops we upheld in Martinez-Fuerte,” the Court expressly relied upon the fact that “[h]ere, checkpoints are selected pursuant to the guidelines.” 496 U.S. at 453, 110 S.Ct. at 2487. Accordingly, I read Sitz as implicitly recognizing that, for a DUI or safety roadblock to be constitutional, the discretion of the field officers must be governed by written guidelines setting forth specific operational and site selection procedures such as those required by State v. Jones.
The courts of other states which have addressed the issue of whether written roadblock guidelines are required under the Fourth Amendment after Sitz, also have read the Sitz decision as requiring written guidelines to limit the discretion of the officers in the field.[3] In fact, in Holt v. State, 887 S.W.2d 16 (Tex.Crim.App.1994), the Texas Court of Criminal Appeals, relying on the significance of the written guidelines in Sitz, concluded not only that the guidelines must be in writing but also must be statewide in application and enacted by a politically accountable governing body. Specifically, the Holt court held:
Because a governing body in Texas has not authorized a statewide procedure for DWI roadblocks, such roadblocks are unreasonable and unconstitutional under the Fourth Amendment of the U.S. Constitution unless and until a politically accountable governing body sees fit to enact constitutional guidelines regarding such roadblocks.
887 S.W.2d at 19 (footnote omitted).

Gravity of Public Concern

As the majority opinion correctly recognizes, the state has a legitimate interest in protecting the health, safety, and welfare of its citizens from unsafe motor vehicles.[4] Delaware v. Prouse, 440 U.S. at 658, 99 S.Ct. at 1398 (“We agree that the States have a vital interest in ensuring ... vehicles are fit for safe operation ... ”). It is not enough, however, simply to determine, as does the majority opinion, that the state is pursuing a legitimate state interest by the roadblock. Because the Brown test is a balancing test, which weighs the relative importance of the state interest against the degree of intrusion on the individual’s liberty and privacy created by the roadblock, the importance of the governmental interest is also a central consideration. As the advanced governmental *290 interest becomes more compelling, logically, under the balancing test, it will carry more weight.
The common sense rationale for constitutionally allowing more expansive searches under the Fourth Amendment in response to more serious threats to public safety was explained by Justice Jackson over 45 years ago:
[I]f we are to make judicial exceptions to the Fourth Amendment ..., it seems to me they should depend somewhat upon the gravity of the offense. If we assume, for example, that a child is kidnapped and the officers throw a roadblock about the neighborhood and search every outgoing car, it would be a drastic and undiscriminating use of the search. The officers might be unable to show probable cause for searching any particular car. However, I should candidly strive hard to sustain such an action, executed fairly and in good faith, because it might be reasonable to subject travelers to that indignity if it was the only way to save a threatened life and detect a vicious crime. But I should not strain to sustain such a roadblock and universal search to salvage a few bottles of bourbon and catch a bootlegger.
Brinegar v. United States, 338 U.S. 160, 183, 69 S.Ct. 1302, 1314, 93 L.Ed. 1879 (1949) (Jackson, J., dissenting). In other words, in employing the Brown balancing test, some state interests may be more compelling than others. Even though the Florida Legislature has recognized a state interest in vehicle safety by adopting laws mandating certain motor vehicle equipment, sections 316.215-316.6105, Florida Statutes (1993), and by authorizing police officers to stop and inspect a motor vehicle “upon reasonable cause to believe that a vehicle is unsafe or not equipped as required by law,” section 316.610(1), Florida Statutes (1993), the Legislature has not concluded that the public’s concern with vehicle safety is sufficiently grave to enact speeific statutory authorization for advancing the enforcement of motor vehicle safety and equipment laws through the use of police roadblocks.[5] Further, in 1981, the Legislature repealed Florida’s statewide system of mandatory motor vehicle inspection and certification, Ch. 81-212, 1981 Fla.Laws 840, repealing sections 325.11-325.33, Florida Statutes (1979) [repealed]; and, even while the safety inspection system was in place, operation of an automobile without a valid inspection sticker was only a “noncriminal violation.” State v. Webb, 335 So.2d 826, 827 (Fla.1976). Thus, the state interest in preventing drunk driving, upheld in Sitz as a “grave and legitimate” state interest, 496 U.S. at 451, 110 S.Ct. at 2485-2486; in interdicting the flow of illegal drugs, upheld in Cardwell v. State, 482 So.2d 512 (Fla. 1st DCA 1986); or in detecting illegal aliens, upheld in Martinez-Fuerte, 428 U.S. at 562, 96 S.Ct. at 3085, all must be seen as more compelling governmental interests than the state’s interest in motor vehicle safety or in general education of the driving public advanced here, given the Legislature’s minimal regulation of this matter. This conclusion is significant when a court, as here, is required to measure the reasonableness of the Fourth Amendment seizure, because a less compelling state interest will only support a less intrusive interference with liberty. Sitz, 496 U.S. at 451-452, 110 S.Ct. at 2485-2486.

Effectiveness of Roadblock in Advancing State Interest

In its Brown balancing analysis, the majority opinion does not focus on the effectiveness of the roadblock in advancing the identified state interests. In Sitz, the Supreme Court defined the judicial role in reviewing this Brown balancing factor as determining “the degree to which the seizure advances the public interest.” Brown, 443 U.S. at 51, 99 S.Ct. at 2640. The Sitz court expressly excluded reviewing courts from a eonsider- *291 ation of whether the seizure is the most reasonable available law enforcement technique to address the public interest. As the Court stated:
... [f]or purposes of Fourth Amendment analysis, the choice among such reasonable alternatives remains with the governmental officials who have a unique understanding of, and a responsibility for, limited public resources, including a finite number of police officers.
Sitz, 496 U.S. at 453-454, 110 S.Ct. at 2487.
Sitz did ratify, however, the type of effectiveness or productivity analysis used in Delaware v. Prouse. Id. In Prouse, the Court determined that there must be some empirical showing that the asserted state purpose will be served. The Prouse Court concluded that spot cheeks of driver’s licenses and vehicular registrations initiated without suspicion at the discretion of the officer in the field was not sufficiently productive of the state interests to justify the intrusion. The Court analyzed the effectiveness of the roadblock and discussed the need for empirical data, as follows:
The foremost method of enforcing traffic and vehicle safety regulations ... is acting upon observed violations. Vehicle stops for traffic violations occur countless times each day; and on these occasions, licenses and registration papers are subject to inspection and drivers without them will be ascertained. Furthermore, drivers without licenses are presumably the less safe drivers whose propensities may well exhibit themselves. Absent some empirical data to the contrary, it must be assumed that finding an unlicensed driver among those who commit traffic violations is a much more likely event than finding an unlicensed driver by choosing randomly from the entire universe of drivers. If this were not so, licensing of drivers would hardly be an effective means of promoting roadway safety. It seems common sense that the percentage of all drivers on the road who are driving without a license is very small and that the number of licensed drivers who will be stopped in order to find one unlicensed operator will be large indeed. The contribution to highway safety made by discretionary stops selected from among drivers generally will therefore be marginal at best.
440 U.S. at 659-660, 99 S.Ct. at 1399.
Below, there was no attempt by the state to show by empirical data that roadblocks, such as the roadblock used here, are an effective and productive means of increasing motor vehicle safety and educating the driving public.[6] In the absence of such empirical *292 evidence, it would seem impossible to determine the effectiveness of this roadblock in advancing the asserted state interests or to give this prong of the Brown test any weight in this case.
In summary, because the guidelines governing the roadblock in the present case fail to comply with the State v. Jones requirements of discretion-limiting written guidelines covering “in detail the procedures which field officers are to follow at the roadblock,” 488 So.2d at 438, because the gravity of the state interests sought to be advanced by the roadblock will support only the most minimal interference with liberty (even if strict State v. Jones written guidelines had existed), and because the state failed to support with any empirical evidence the effectiveness of the roadblock in advancing those asserted state interests, I conclude that the state failed to establish that the roadblock procedures satisfied the Brown balancing test. As a result, I believe that the roadblock in the present case was an unreasonable search and seizure under the Fourth Amendment and, accordingly, we are constrained to reverse Campbell’s conviction.

. The Fourth Amendment to the United States Constitution provides:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. U.S. Const., amend. IV.

. See, e.g., State v. Sims, 808 P.2d 141 (Utah Ct.App.1991); State v. Larson, 485 N.W.2d 571 (Minn.Ct.App.1992); Hagood v. Town of Town Creek, 628 So.2d 1057 (Ala.Crim.App.1993); Holt v. State, 887 S.W.2d 16 (Tex.Crim.App.1994); Nelson v. Lane County, 304 Or. 97, 743 P.2d 692 (1987), cited by the majority in the instant case, pre-dates the Sitz decision by three years.

. The state argues and the majority opinion recognizes that the roadblock here also sought to address complaints about speeding in the area. Although it is obvious that a roadblock deters speeding, since it requires vehicles to slow and stop, it is equally obvious that the speeding concerns were addressed here by the deployment of radar equipped units, which resulted in the issuance of the 49 speeding tickets, rather than by the roadblock.

. Compare, for example, New Jersey where, in addition to annual inspections, the legislature, has specifically mandated roadblocks for the inspection of motor vehicles:
The director shall conduct random roadside examinations of motor vehicles required to he inspected in this State to provide a continuous
monitoring of motor vehicles. Each year at least 1% of the total number of motor vehicles registered in the State shall be inspected by roadside examination teams under the supervision of the director.
NJ.Stat.Ann. § 39:8-2.

. New Jersey v. Kadelak, 258 N.J.Super. 599, 610 A.2d 916 (App.Div.1992), affirmed after remand, 280 N.J.Super. 349, 655 A.2d 461 (App.Div.1995), provides an example of the importance of empirical data in establishing the effectiveness of the roadblock in advancing the state’s interest. In Kadelak, which involved an appeal in a driving-while-intoxicated case of a denial of the defendant's motion to suppress based upon the contention that the roadside safety check in which he was stopped violated his Fourth Amendment rights, the New Jersey appellate court concluded that the record contained no empirical data to assist the court in making the balancing test and reversed and remanded for further proceedings. The court stated:
[T]he only evidence submitted by the State before the Municipal court was the testimony of Patrolman Mains who was really unsure of the procedure leading up to the roadblock. No evidence was offered in support of the reasons for random roadside inspections except for the existence of legislative authority. Further, no empirical data was submitted to assist in examining the balance between the intrusion on individual rights against the promotion of some legitimate governmental interest; for example, the frequency of vehicles which have passed inspection at a state facility but have been found, on roadside inspection, to have developed defects; or vehicles which have passed inspection at a private facility notwithstanding defects found on roadside inspections.
[[Image here]]
We recognize that highway safety is certainly a matter of extreme importance to the public and may warrant this minimal intrusion upon the travelling public's right to be let alone. On the other hand, we can envision a motorist who has just had his vehicle inspected after a long wait, with the current inspection sticker displayed on its windshield, on his way to an important appointment, not displaying any evidence of any equipment violations and being stopped simply because he is the fifth car in a line of traffic. Should he be subjected to this intrusion upon his reasonable expectation of privacy.... We conclude that the record in this case is insufficient to properly address this important issue and therefore reverse the de *292 termination of the Law Division and remand the matter to that court for reconsideration.
610 A.2d at 924, 925. On remand, the state presented empirical evidence supporting the reasons for and effectiveness of the New Jersey roadblock inspection in promoting motor vehicle safety. Based on such evidence, the trial court and appellate court upheld the constitutionality of the roadblock. State v. Kadelak, 280 N.J.Super. 349, 655 A.2d 461.